**In re James ELLETT, Debtor.**

**James Ellett, Plaintiff,**

v.

**Gerald Goldberg, Executive Director of the Franchise Tax Board, Defendant.**

**Bankruptcy No. 94–25454–A–13.**
**Adversary No. 97–2820.**

United States Bankruptcy Court,
E.D. California,
Sacramento Division.

Nov. 1, 2004.

Robert N. Kolb, Antioch, CA, for plaintiff.

Kristian D. Whitten, Deputy Attorney General, California Dept. of Justice, San Francisco, CA, for defendant.

## AMENDED MEMORANDUM DECISION

MICHAEL S. MCMANUS, Chief Judge.

Plaintiff James Ellett seeks prospective injunctive relief against Gerald Goldberg, the Executive Director of the Franchise Tax Board, to enjoin him from causing the Franchise Tax Board to collect delinquent pre-petition income taxes on the ground that the plaintiff's liability for these taxes

was discharged in bankruptcy. This relief will be denied.

## I

The plaintiff was indebted to the California Franchise Tax Board ("FTB") for delinquent state income taxes owed for tax years 1981, 1983, 1984, 1985, and 1990. To retire the taxes due for 1981, 1983, and 1984, the plaintiff entered into a repayment agreement with the FTB requiring him to pay $250 a month. For eight months, from November 1993 through June 1994, the plaintiff abided by this repayment agreement.

These payments came to a halt when, on June 11, 1994, the plaintiff filed a chapter 13 petition. His schedules duly listed the Franchise Tax Board as a creditor. Only one other creditor was listed on the schedules.

On his bankruptcy petition, the plaintiff gave his social security number as XXX–XX–5626. His correct social security number was XXX–XX–5623. There is no explanation for this error other than that the social security number was mistyped on the petition and the error was repeated by the court and the chapter 13 trustee on notices sent to the FTB. The parties agree, however, that the error was inadvertent and was not motivated by a desire to mislead or deceive the court or the FTB.

The error was repeated on the notice mailed to creditors advising them of the filing of the petition, the date of the first meeting of creditors convened pursuant to 11 U.S.C. § 341(a), and the bar date for filing proofs of claim (hereafter, "bankruptcy notice"). This bankruptcy notice was dated August 16, 1994 and was mailed to the FTB on August 17. The FTB admits that it received the bankruptcy notice.

The FTB did not file a proof of claim by the December 7, 1994 bar date for filing proofs of claim. Nor did it request an extension of time to file a claim before the deadline expired.[1] The FTB did not otherwise appear in the plaintiff's chapter 13 case.

The plaintiff filed and confirmed on April 20, 1995 a chapter 13 plan that required him to pay a 12% dividend on unsecured claims.

While the FTB did not appear in the chapter 13 case, it did take steps to collect the plaintiff's delinquent taxes outside of the bankruptcy case.

First, on or about November 15, 1994 the FTB advised the plaintiff that his pre-bankruptcy repayment agreement had been terminated due to the cessation of payments directly to the FTB. There is nothing in the record suggesting that the plaintiff responded to the November 15 notice from the FTB.

Second, on February 6, 1995 the FTB levied the plaintiff's wages. The levy provoked a response from the plaintiff. Through counsel, the FTB was advised, apparently by telephone, of the pending

1. In 1994, Fed. R. Bankr.P. 3004(c) required all creditors, whether nongovernmental or governmental, to file proofs of claim within 90 days after the first date set for the meeting of creditors. Provided this 90–day deadline had not expired, however, Rule 3002(c)(1) permitted a governmental entity to request an extension of the deadline. In 1996, Rule 3004(c) was amended to track newly revised section 509(b)(9) as amended on October 22, 1994. Section 502(b)(9) provides that a claim by a governmental entity is timely if filed before 180 days after the date of the order for relief. Amended Rule 3004(c)(1) also permits an extension of the 180–day deadline provided the request for an extension is made before the deadline expires. Mr. Goldberg's trial brief erroneously states that this extended deadline was effective in this case. *See* Trial Brief of Defendant Gerald Goldberg, p. 8, n. 5.

bankruptcy. As a result, the FTB "withdrew" its levy. However, by this time it was too late to file a proof of claim.

The plaintiff then consummated his plan. Of course, because the FTB did not file a proof of claim, it received nothing on account of its claim. All plan dividends were paid to administrative claimants and to the one other creditor filing a proof of claim. The plaintiff received his discharge on April 19, 1997.

It appears from the stipulated exhibits introduced by the parties that the correct social security number never appeared on any of the documents filed or served on the FTB. For instance, the discharge order dated April 19, 1997 bears the incorrect number.

Once the plan was completed, the FTB swung back into action. In a written demand dated October 8, 1997, the FTB staked out the position that because the plaintiff had "NOT discharged" his prepetition income taxes, and because the bankruptcy case had been concluded, it was able to collect those taxes.

Through counsel, the plaintiff responded on October 13. Counsel's letter to the FTB demanded that all collection activity cease because it violated the plaintiff's chapter 13 discharge. While counsel recognized that the FTB had not filed a proof of claim, he pointed out that the plaintiff had duly scheduled the FTB and its claim, the FTB received the bankruptcy notice (which included the deadline for filing a proof of claim), the plan provided for the taxes, the plan had been completed, and the plaintiff had received a discharge.

The next day, a copy of the petition, Schedule F, the bankruptcy notice, the plan, a modification of the plan, the order confirming the plan, and the discharge order were sent by facsimile transmission to the FTB.

In response, the plaintiff's attorney was advised by telephone that the FTB did not believe the tax liability had been discharged because the bankruptcy notice had included a social security number that did not belong to the plaintiff. That is, while the FTB received notice that a bankruptcy petition had been filed by James Ellett, the social security number on that notice belonged to someone other than James Ellett.

This was a problem for the Franchise Tax Board. Its database identifies taxpayers by social security number. This is easy to believe and understand. Names change but social security numbers rarely change. Also, there could be more than one James Ellett but only one James Ellett with a particular social security number.

As a matter of routine, whenever the FTB receives a bankruptcy notice, it checks its records to verify that the social security number on that notice belongs to the person identified as the plaintiff. If this is verified, and after determining that the debtor owes delinquent taxes, the FTB files a proof of claim.

If the FTB discovers that the debtor's name and the social security number do not match, it checks its records to determine whether the record holder of that social security number owes taxes. If so, the case is referred to the FTB's Bankruptcy Unit for further investigation. The Bankruptcy Unit might determine, for instance, that the debtor and the record holder of the social security number are the same person. Perhaps a marriage, a name change, or an alias explains the name discrepancy. In such cases, a proof of claim may be filed.

In this case, however, the record holder of social security number XXX–XX–5626 owed no taxes. That person and James

Ellett were obviously different people because James Ellett said he owed taxes while the record holder of the social security number owed none.

In those instances where the name of the debtor does not match the social security number on the bankruptcy notice, and the taxpayer with that social security number owes no taxes, the debtor's name and the erroneous social security number are placed by the FTB on a "fallout list." This list is a cumulative listing of all mismatched social security numbers and names contained on bankruptcy notices. Each entry is given a locator number and that locator number is also placed on the bankruptcy notice.

Ideally, someone at the FTB then investigates further and attempts to match the name of the debtor to a correct social security number. This might be done by manually retrieving tax returns[2] or using the cross reference procedures laid out in Stipulated Exhibit 16.

However, "[d]ue to resource limitations, and the lengthy fallout list, these further investigations occurred infrequently, if at all." *See* Declaration of Alda Jeanne Leahy, filed May 21, 2004, at p. 2, ¶ 7. There is no evidence that the FTB did anything to determine the plaintiff's correct social security number.

## II

 A chapter 13 discharge is limited to debts "provided for by the plan." 11 U.S.C. § 1328(a).[3] In order to provide for a debt, the chapter 13 plan must make provision for the claim and the holder of the claim must be given notice of the filing of the bankruptcy petition in time to participate by filing a timely proof of claim. *See* Fed. R. Bankr.P. 3002.

Did the plaintiff's chapter 13 plan provide for the taxes in question and did the FTB have the opportunity to participate in the chapter 13 case and collect its share of the plan distributions?

## A

 The plaintiff scheduled the taxes owed to the FTB on Schedule F signifying that he believed that the taxes were unsecured claims not entitled to priority status. *See* 11 U.S.C. § 507(a)(8). There is nothing before the court, either in the evidentiary record or the argument of the parties, suggesting that the taxes were secured by any property owed by the plaintiff or were entitled to priority status. Indeed, given the tax years in question, it seems likely that these taxes were not entitled to priority status. *See id.;* 11 U.S.C. § 523(a)(1).

The chapter 13 plan confirmed by the court required the plaintiff to pay a 12% dividend to holders of unsecured claims over 37 months. Consequently, the court concludes that the plaintiff's chapter 13 plan provided for the taxes owed to the FTB. *See Lawrence Tractor Co. v. Gregory (In re Gregory),* 705 F.2d 1118 (9th Cir. 1983).

---

**2.** As noted in the Trial Brief of Mr. Goldberg, matching Mr. Ellett to his tax returns would not have been a simple task given the incorrect social security number, his several address changes, and his name variations (James Ellett, Jim Ellett, James E. Ellett, Jim E. Ellett). *See* Trial Brief of Defendant Gerald Goldberg, p. 5, n. 3.

**3.** Section 1328(a) provides: "As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title...."

## B

■ Providing for a claim in a chapter 13 plan, however, does no good if the debtor fails to tell the claim holder about the bankruptcy case in time to file a proof of claim. In this circumstance, the debtor will not discharge that claim even if the plan makes provision for its payment. *See, e.g., Crites v. Oregon (In re Crites),* 201 B.R. 277 (Bankr.D.Or.1996); *Southtrust Bank of Ala. v. Gamble (In re Gamble),* 85 B.R. 150, 152 (Bankr.N.D.Ala. 1988); *In re Cash,* 51 B.R. 927, 929 (Bankr.N.D.Ala.1985); *Leber v. Illinois Dep't of Revenue (In re Leber),* 134 B.R. 911 (Bankr.N.D.Ill.1991).

This result is dictated by the requirements of due process. *See* U.S. Const., amend. V ("[n]o person ... shall ... be deprived of ... property, without due process of law...."). "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

■ Governmental entities with regulatory jurisdiction over a debtor as well as those responsible for collecting taxes are also entitled to notice of the commencement of a bankruptcy case as a condition to the discharge of their claims. "Fundamental fairness" rather than due process requires such notice. *See, e.g., City of New York v. New York, N.H. & H.R., Co.,* 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953); *In re Hairopoulos,* 118 F.3d 1240, 1244, n. 3 (8th Cir.1997); *IRS v. Hildebrand,* 245 B.R. 287, 290 (M.D.Tenn.2000).

■ Unquestionably, the FTB received notice that a chapter 13 petition had been filed by the plaintiff well before the December 7, 1994 bar date for filing proofs of claim. It maintains through Mr. Goldberg, however, that the erroneous social security number on the bankruptcy notice vitiated the effectiveness of the notice.

### 1

When this case was filed, 11 U.S.C. § 342(a) required that appropriate notice of an order for relief entered in a case under title 11 be given to creditors. Section 342(a) did not (and does not) prescribe the form of such notice. The Federal Rules of Bankruptcy Procedure address the form of the notice.

Fed. R. Bankr.P.2002 implements section 342(a).

Subdivision (a) of Rule 2002 requires "the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees not less than 20 days notice by mail of ... the meeting of creditors pursuant to § 341 of the Code...."

In this case, like all other chapter 13 cases filed in this court, the chapter 13 trustee mailed the notice of the first meeting of creditors to all creditors,[4] namely, the FTB and the other scheduled creditor, and to the plaintiff and his attorney. The notice was mailed on August 17, 1994, thereby giving 22 days' notice of the first meeting.

Subdivision (f)(1) provides that "the clerk, or some other person as the court may direct, shall give the debtor, all creditors, and indenture trustees notice by mail of ... the order for relief ... [and] the

---

**4.** It is not uncommon for a bankruptcy court to require that the chapter 13 trustee mail the notice to creditors. *See* Lawrence P. King, et al., eds., 3 *Collier on Bankruptcy,* ¶ 342.02[1] (15th ed. rev.).

time allowed for filing claims pursuant to Rule 3002...."

In this case, these notices were combined [5] with the notice of the first meeting of creditors. This combined notice, referred to throughout this Memorandum Decision as the "bankruptcy notice," was mailed on August 17, 1994 to the plaintiff, the plaintiff's attorney, the FTB, and the other scheduled creditor. *See* Stipulated Exhibit 6.

Interestingly, nothing in Rule 2002, as effective in 1994,[6] required that an individual debtor's social security number be included on the bankruptcy notice. However, Rule 2002(n) required that every notice given under Rule 2002 have a caption compliant with Fed. R. Bankr.P. 1005. In 1994, Rule 1005 provided that the "caption of a petition commencing a case under the Code shall contain the ... title of the case ... The title of the case shall include the name, social security number and employer's tax identification number of the debtor...."

In this case, the social security number given for the plaintiff on the bankruptcy notice was the wrong social security number. Did this error vitiate the effectiveness of the notice given to the FTB?

### 2

This is a close question.

On the one hand, even a creditor receiving no formal notice that its debtor has filed a bankruptcy case may have its claim discharged if the creditor nonetheless learns of the petition. Such knowledge imposes an obligation to inquire further. If the creditor fails to inquire further, it is nonetheless on notice of everything to which such inquiry would have led.

This is the premise of 11 U.S.C. § 523(a)(3). Section 523(a)(3) bars the chapter 7 discharge of a claim omitted from the schedules unless the claim holder "had notice *or actual knowledge* of the case in time" to file a timely proof of claim or a complaint to except the debt from discharge under 11 U.S.C. § 523(a)(2), (a)(4), or (a)(6). *See, e.g., In re Price*, 871 F.2d 97 (9th Cir.1989) (claim discharged when a creditor who learned of debtor's petition 58 days prior to bar date but failed to make inquiry of the deadline and failed to file timely dischargeability complaint); *Manufacturers Hanover v. Dewalt (In re Dewalt)*, 961 F.2d 848 (9th Cir.1992) (unscheduled creditor's discovery of a bankruptcy petition seven days prior to the bar date for dischargeability complaints is not sufficient notice even though "acting under ideal circumstances and with the utmost of diligence" the creditor might have requested an extension of the bar date).

**5.** The 1983 Advisory Committee Note to Rule 2002(f) provides that these notices, and others, may be combined to avoid the necessity of more than one mailing. The Note also refers to Official Form 16 with approval. Official Form 16 was titled, "Notice of Commencement of Case Under Bankruptcy Code, Meeting of Creditors, and Fixing of Dates." By 1994 this form had been amended into several alternative versions known as Official Forms 9A through 9I. Official Form 9I was for use in chapter 13 cases. Comparison of Official Form 9I to Stipulated Exhibit No. 6 reveals that the bankruptcy notice mailed to the FTB in this case, substantially conformed

with the requirements of the official form. *See* Fed. R. Bankr.P. 9009.

**6.** In 2003, Rule 2002(a) was amended to require that the notice of the meeting of creditors include the debtor's social security number "unless the court orders otherwise." Rule 1005 was also amended in 2003 to require only that the last four digits of an individual debtor's social security number be included in the title of the case. Consequently, beginning in 2003, the only notice containing the entire social security number is the first meeting notice.

■ In other words, "[w]here formal notice from the Bankruptcy Court is omitted, informal notice which provides creditor with an opportunity for a fair hearing will satisfy the requirements of notice." *Ascencio v. Ramirez*, 36 B.R. 943, 945–46 (D.Vi.1984).

On the other hand, when a bankruptcy notice does not include basic information necessary for a creditor to identify the debtor as its debtor, courts have concluded that the notice is not effective.

For example, in *Pecovsky v. IRS (In re Pecovsky)*, 241 B.R. 530 (Bankr.M.D.Pa. 1999), the debtor operated a restaurant. After failing to pay federal employment taxes for several years, the debtor filed a chapter 7 petition that was later converted to chapter 13. When the petition was filed, the debtor owed no personal income taxes. However, the petition and all subsequent notices included the debtor's social security number but not his employer's tax identification number. As a result, when the IRS received notice of the petition it searched its computerized records against the listed social security number but not the undisclosed employer's tax identification number. It discovered no unpaid taxes and so did not file a proof of claim. The bankruptcy court held that notice was defective without the employer's tax identification number:

> Debtor was responsible to ensure that the IRS had adequate notice of his Petition. I would find "adequacy" to be lacking where the source of the tax liabilities is omitted even if the amount of

them is listed. "Due process requires notice that . . . reasonably conveys all of the required information, and permits a reasonable amount of time for response." *Oppenheim, Appel, Dixon & Co. v. Bullock (In re Robintech, Inc.)*, 863 F.2d 393, 396 (5th Cir.1989), *cert. denied*, 493 U.S. 811, 110 S.Ct. 55, 107 L.Ed.2d 24 (1989) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 318, 70 S.Ct. 652, 94 L.Ed. 865 (1950)) (emphasis added). Put another way, in a case where a person does not know or have reasonable cause to believe that it has rights which could be affected by bankruptcy, mere knowledge of the bankruptcy is not the kind of actual and timely notice necessary to expect such person to exercise due diligence to preserve that unknown right; such person would not have been afforded fundamental due process.

*In re Pecovsky*, 241 B.R. at 533–34.[7]

The same result was reached in *In re Anderson*, 159 B.R. 830 (Bankr.N.D.Ill. 1993), when the debtor failed to include his employer's tax identification number and fictitious business name in the caption. As a result, the court concluded that the notice of the commencement of the bankruptcy served on the state taxing authority was defective.

Fed.R.Bankr.P. 1005 requires that a bankruptcy proceeding title contain the tax identification number of the Debtor, and all names the Debtor has used in the past six years. [Footnote omitted.] *In re Sleepy Giant*, 120 B.R. 6, 7

---

7. In *Pecovsky*, rather than bar the discharge of the IRS's claim because of the defective notice, the bankruptcy court permitted the IRS to file a late claim pursuant to the court's equitable authority under 11 U.S.C. § 105(a). In the Ninth Circuit, at least in chapter 13 cases, it is doubtful that permitting a late claim is an alternative. *See In re Osborne*, 76 F.3d 306, 311 (9th Cir.1996); *Zidell, Inc. v.* *Forsch (In re Coastal Alaska)*, 920 F.2d 1428, 1432–33 (9th Cir.1990); *In re Tomlan*, 102 B.R. 790, 793 (E.D.Wash.1989), *affirmed, Ledlin v. United States (In re Tomlan)*, 907 F.2d 114 (9th Cir.1990); *In re Edelman*, 237 B.R. 146, 153 (9th Cir. BAP 1999). Whether or not an available option, in the case at bar it is too late to allow a late claim. The case has long since been concluded.

(Bankr.D.Conn.1990). Accuracy in the caption of the bankruptcy petition is of substantive importance—not a mere matter of form. *In re Austin,* 46 B.R. 358, 360 (Bankr.E.D.Wis.1985). The caption of the case informs a creditor of exactly who filed the bankruptcy, so that a creditor has opportunity to determine whether it has a claim against that Debtor's estate. *In re AM Intern. Inc.,* 142 B.R. 252, 256 (Bankr.N.D.Ill.1992). *In re Anderson,* 159 B.R. at 838.[8] *But see In re Bringe,* 1992 WL 12003983 (Bankr. W.D.Wis.1992).

Other courts have concluded that a debtor's failure to list aliases and former names in the caption prevented the discharge of claims held by creditors who knew the debtor only by the unlisted name. *See, e.g., Southtrust Bank of Ala. v. Gamble (In re Gamble),* 85 B.R. 150 (Bankr.N.D.Ala.1988); *In re AM International, Inc.,* 142 B.R. 252 (Bankr.N.D.Ill. 1992).

▉ This court concludes that the burden falls on the debtor to give accurate information in the case caption, statements, and schedules, at least when that information is necessary for a creditor to identify the debtor. This is a burden allocated to the debtor by 11 U.S.C. § 521(1) and Rule 1005. If a business name, former name, alias, social security number, or employer's tax identification number is omitted or is not listed accurately and as a result the creditor cannot identify the debtor as its debtor, the claim held by that creditor will not be discharged unless it can be demonstrated that the creditor managed to identify the debtor despite the incomplete or inaccurate caption.

This is consistent with *Lawrence Tractor Co. v. Gregory (In re Gregory),* 705

F.2d 1118, 1123 (1983), in which the Ninth Circuit concluded that if an unsecured creditor received notice that "its debtor" had filed a bankruptcy petition it was "under constructive or inquiry notice that its claim may be affected, and it ignores the proceedings ... at its peril." Here, the incorrect social security number prevented the FTB from identifying the plaintiff as its debtor.

It is also consistent with section 523(a)(3) and the cases discussed above. If a creditor knows that its debtor has filed a bankruptcy petition, there is a duty to make further inquiry regarding impact of the case on the creditor's claim. In this instance, however, the FTB could not identify the plaintiff as someone who owed it delinquent taxes, and researching the bankruptcy court's docket would not have shed any additional light on the identify the debtor.

Due process and fundamental fairness require that the debtor accurately reveal the debtor's own identity to his or her creditors. This proposition seems self-evident. This information is surely at the fingertips of the debtor. On the other hand, requiring the creditor to ferret out the identity of the debtor imposes a significant administrative burden on it. This is particularly so for creditors like the FTB which undoubtedly must deal with thousands of bankruptcy notices. *Cf. In re Dewalt,* 961 F.2d at 851 (declining to require a creditor with just seven days of notice of the deadline for dischargeability complaint to seek an extension of that deadline, holding "we see no reason, however, to interpret the statute as placing even the most conscientious of creditors in a position in which, because of the negli-

---

**8.** Once again, rather than prevent the discharge of the claims, the bankruptcy court

permitted the creditor to file a late claim. *See* footnote 7.

gence of the debtor, a motion for an extension of time is their only option.")

Of course, self-interest will usually prompt most creditors to conduct some level of inquiry so that they can file a claim or otherwise contest the bankruptcy petition. If they do not do so successfully, however, the debtor will not discharge the claim.

It deserves mention that the plaintiff was in a position to protect himself from this result.

Fed. R. Bankr.P. 3004 permits a debtor to file a proof of claim on behalf of a creditor. The deadline for doing so in this case expired 30 days after the December 7, 1994 deadline for the FTB to file its own proof of claim. A review of the court file on December 8 would have revealed no proof of claim by the FTB.

On its face, this should have seemed odd. After all, the FTB had been attempting to collect the taxes immediately before the petition was filed. Why did it fail to file a proof of claim? The plaintiff could have contacted the FTB after December 7 to ask this question without running any risk. Assuming proper notice to the FTB, it was too late for the FTB to file its own claim. But, if there was a notice issue that could prevent the discharge of the FTB's claim, the plaintiff had a 30–day window to file a proof of claim on behalf of the FTB.

### 3

The court does not believe its conclusion that the noticing error results in the plaintiff's inability to discharge the FTB's claim is inconsistent with 11 U.S.C. § 342(c). Section 342(c) provides:

> If notice is required to be given by the debtor to a creditor under this title, any rule, any applicable law, or any order of the court, such notice shall contain the name, address, and taxpayer identification number of the debtor, but

the failure of such notice to contain such information shall not invalidate the legal effect of such notice.

The argument might be made that if section 342(c) provides that the absence of a social security number from a notice does not vitiate its effectiveness, then the court's conclusion that due process and fundamental fairness required its inclusion in the bankruptcy notice given in this case might be wrong. This argument lacks merit.

First, but least, section 342(c) was added to the Bankruptcy Code on October 22, 1994. It has no application to this case because it was filed before October 22, 1994.

Second, section 342(c) makes no reference to a debtor's social security number. It requires only that the debtor's taxpayer identification number be included in notices given by the debtor.

> "Most individual debtors do not have taxpayer identification numbers. The legislative history suggests that for a debtor without a taxpayer identification number the notice can include a Social Security number, but the statute itself does not contain that alternative."

Lawrence P. King, et al., eds., 3 *Collier on Bankruptcy,* ¶ 342.02[1] (15th ed. rev.).

Third, section 342(c) applies only to notices given by the debtor. The clerk of the court or some other person designated by the court (in this case, the chapter 13 trustee) was charged with giving the bankruptcy notice at issue. Section 342(c) would not have been applicable even assuming it had been enacted before the plaintiff's petition had been filed. *Id.*

Finally, as noted in *Collier on Bankruptcy,* the information required by section 342(c) can be obtained by reviewing the court docket. For that reason, "Congress wished to make clear that the omission of

the additional identifying information was not so serious a defect that it would in any way invalidate the notice." *See* Lawrence P. King, et al., eds., 3 *Collier on Bankruptcy*, ¶ 342.02 (15th ed. rev.).

In this case, a review of the court docket or file would not have turned up the plaintiff's correct social security number. To this day, the same incorrect social security number appears on the docket and, as noted above, the error has been repeated on all notices given by the court and the trustee.

### III

For these reasons, the court concludes that the pre-petition taxes owed to the FTB were not discharged in the plaintiff's chapter 13 case. Therefore, no injunctive relief will be issued enjoining Mr. Goldberg from collecting these taxes.

Because the plaintiff has not prevailed, no fees and costs will be awarded to him. Even if the court had found for the plaintiff, it is doubtful the plaintiff would have been eligible for an award of attorney's fees for the reasons argued by Mr. Goldberg. However, given the result, the court need not reach the issue.

A separate judgment will be entered. Counsel for Mr. Goldberg shall prepare a proposed form of judgment, serve it on counsel for the plaintiff, then lodge it with the court ten calendar days after its service. Counsel for the plaintiff shall have seven calendar days from its service to object in writing to the form of the judgment.